IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEEDS OF PEACE COLLECTIVE, MICHAEL BOWERSOX, and THREE RIVERS CLIMATE CONVERGENCE ("3RCC"), | ) ) ) ) |
| | ) Civil Action No. _____ |
| Plaintiffs, | ) ) |
| v. | ) **VERIFIED COMPLAINT** |
| | ) |
| CITY OF PITTSBURGH BUREAU OF POLICE; OFFICER SELLERS (Badge No. 3602); OFFICER KURVACH (Badge No. 3480); and OFFICER JOHN DOE 2 (Badge No. 3564), | ) ) ) ) ) |
| Defendants. | |

## INTRODUCTION

1. This civil-rights lawsuit against the City of Pittsburgh Bureau of Police and several individually named officers arises from the defendants' systematic attempts to harass and discourage lawful First Amendment activities by Plaintiffs *Seeds of Peace Collective* and *Three Rivers Climate Convergence* ("3RCC"). The two organizational plaintiffs are groups of demonstrators against the G-20 Summit being held in Pittsburgh on September 24-25, 2009. *Seeds of Peace* is one of several groups with buses that will be serving food for 3RCC's "climate camp" and "sustainability fair," political demonstrations that will be held in Point State and Schenley Parks in Pittsburgh. Indeed, this Court issued a preliminary injunction in *CODEPINK v. U.S. Secret Service*, 09-cv-1235 (W.D.Pa., Lancaster, J.), on September 17, 2009, ordering the City of Pittsburgh to allow 3RCC to hold the demonstration at Point State Park. Since that court-issued injunction, City of

        Pittsburgh police have engaged in a pattern of illegal searches, vehicle seizures, raids and detentions of *Seeds of Peace* members.

2. On Friday, September 18, the police illegally searched and seized a bus, known as the *Seeds of Peace* bus, in retaliation for the group's association with and intention to provide food and medical supplies to G-20 demonstrators. *Seeds of Peace* reclaimed its bus late Friday night, but only after being forced to pay a fee. Late on Sunday night, September 20, *Seeds of Peace* was preparing food to begin serving *3RCC's* demonstrations on Monday, when more than thirty Pittsburgh police officers with semi-automatic weapons raided the private property in Lawrenceville where the *Seeds of Peace* and another food-preparation bus were parked. The police insisted on searching the property and the buses, but having no search warrant Plaintiffs refused consent to search the buses. Subsequently, Pittsburgh police detained for nearly two hours four *Seeds of Peace* members on loitering charges while they were walking to their residence. All four members were subsequently released without being charged or cited. This action for injunctive relief and damages results from the foregoing incidents.

## JURISDICTION AND VENUE

3. As plaintiffs seek to vindicate rights protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, this Court has jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Pursuant to 28 U.S.C. §§ 2201 and 2202 this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

4. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)

because the events that give rise to this action occurred within the Western District of Pennsylvania and the defendants are subject to personal jurisdiction here.

## PARTIES

5. Plaintiff *Seeds of Peace Collective* is a non-profit cooperative organization dedicated to providing support to groups and individuals striving for social and environmental justice.

6. Plaintiff Michael Bowersox is co-owner of the Seeds of Peace bus and a member of the Seeds of Peace Collective. Plaintiff Bowersox resides in Moscow, Idaho.

7. Plaintiff *3RCC* is a partnership of Pittsburgh-area groups and individuals, working with like-minded national and international groups, who are concerned about climate change, environmental justice and true sustainability.

8. Defendant City of Pittsburgh Bureau of Police is an agency of the City of Pittsburgh, which is a municipal subdivision organized under the laws of Pennsylvania.

9. Defendant Officer Sellers (first name unknown at this time) is employed by the Pittsburgh Bureau of Police. He wears badge number 3602. He is sued in his individual capacity.

10. Defendant Officer Kurvach (first name unknown at this time) is employed by the Pittsburgh Bureau of Police. He wears badge number 3480. He is sued in his individual capacity.

11. Defendant Officer John Doe 2 (a pseudonym because his name is not known at this time) is employed by the Pittsburgh Bureau of Police. He wears badge number 3564. He is sued in his individual capacity.

12. Defendant Officers John and Jane Doe 3-50 are employed by the Pittsburgh Bureau of Police. These Doe officers were involved in or directed the raid on the Lawrenceville

facility where the bus was parked and in the detention of the four *Seeds of Peace* members.

13. All individually named defendants (including the Doe's) were, at all relevant times hereinafter mentioned, acting under color of state law.

## FACTS

**Demonstrators Converge on Pittsburgh to Protest the G-20 Summit**

14. The Group of Twenty ("G-20") Finance Ministers and Central Bank Governors was established in 1999 to bring together important industrialized and developing nations to discuss key issues in the global economy. It includes 19 of the world's largest national economies, plus the European Union ("EU").

15. The next G-20 Summit is scheduled to be held at the David L. Lawrence Convention Center in Pittsburgh, Pennsylvania, on September 24-25, 2009.

16. Government and financial leaders from many of the world's most influential and powerful nations, including U.S. President Barack Obama, will attend the G-20 Summit.

17. The G-20 Summit has attracted and is attracting thousands of demonstrators. The demonstrators' criticisms include, *inter alia*, that the G-20's decisions result in a concentration and privatization of economic wealth and consequent denial of financial resources for basic human needs like food, clean water, healthcare, etc.; promote violence by waging war on, and occupying, other nations, resulting in countless casualties, including innocents; and are responsible for the failure to adopt "green" policies that protect our planet's fragile natural resources and to address meaningfully the problem of global-climate change.

18. It is expected that thousands of demonstrators will use Pittsburgh's traditional public forums, e.g., streets and parks, to express their views in opposition to the G-20 Summit.

**The *Seeds of Peace* Bus**

19. Since 1986, *Seeds of Peace Collective* has provided food, water, and planning to thousands of activists working on the front lines of social change. The collective has supported communities working to end homelessness and nuclear proliferation, uphold Native American sovereignty, support migrant workers' rights, stop environmental destruction, resist genetically engineered foods, and end corporate domination of our world. Since 1999, *Seeds of Peace* has focused a lot of effort on supporting the movement for "Fair Trade."

20. *Seeds of Peace*, in collaboration with other local and national groups, will be providing food support for demonstrators mobilizing in Pittsburgh during the week of September 20, to protest not just the G-20 Summit, but the International Coal Conference, which will be meeting in Pittsburgh on September 21-23. *Seeds of Peace* will also be helping to provide the medical infrastructure for the week. The group's primary, but not exclusive, beneficiary will be the *3RCC*. This last fact is prominently advertised on the collective's website: http://www.seedsofpeacecollective.org/.

21. *Seeds of Peace* owns and operates a bio-diesel bus that runs on vegetable oil and solar power. The bus, a retrofitted 1986 school bus, has traveled to many places across the country to provide food and medical supplies to demonstrators.

22. *Seeds of Peace* members drove the bus from Montana and arrive in Pittsburgh on Sunday, September 13, 2009.

23. On Monday, September 14, 2009, Seeds of Peace members parked the bus in front of 3713 Melwood Avenue in Pittsburgh's Oakland neighborhood. The bus was parked against traffic but was not obstructing traffic, driveways, or fire hydrants. The owner of 3713 Melwood Avenue consented to the collective parking their bus in front of the residence.

24. The bus remained parked at the Melwood Avenue location from Monday, September 14, 2009, until Friday, September 18, 2009, the date of the events described herein.

**The City of Pittsburgh Bureau of Police Closely Monitors *Seeds of Peace* and Others Providing Logistical Support to Demonstrators While the City Opposes Attempts to Accommodate Out-of-town Demonstrators.**

25. The Pittsburgh Police Bureau's surveillance of G-20 demonstrators has been widely publicized by the local news media.

26. Beginning on Tuesday, September 15, 2009, *Seeds of Peace* members began observing various unmarked cars with people inside parked near the bus and driving by the bus repeatedly during the course of each day.

27. The City has attempted to discourage demonstrators from coming to Pittsburgh by making it difficult for them to stay in the City.

28. For instance, claiming that it never allowed overnight camping in Pittsburgh Parks, the City refused to issue permits for overnight camping.

29. In truth, however, not only does a Pittsburgh ordinance authorize overnight camping with the approval of the City's Parks Department Director, but that authority has been exercised to allow camping by a group highlighting the displacement of Ugandan children. Permission was given in 2007 and again for an overnight tent city at Schenley

Park in April of 2009. Additionally, upon information and belief, the City annually allows participants in the Pittsburgh Vintage Grand Prix to camp overnight in Schenley Park and has periodically allowed large gatherings of people to stay overnight in Schenley Park since at least the mid-1980s.

30. The City's opposition to the G-20 protesters being able to use Schenley Park to accommodate out-of-town demonstrators was so fierce that in the course of defending against a lawsuit filed on September 11, 2009 (*See CODEPINK, et al., v. United States Secret Service, et al.*, 2:09-cv-1235 (W.D. Pa.)), the City misrepresented to the Court that it had refused permission for the April 2009 Ugandan-displacement tent city at Schenley Park. In fact, evidence acquired by plaintiffs' attorneys after the preliminary-injunction hearing showed that the demonstration took place and that the City had issued a permit just a few days before the event.

31. On September 17, the district court denied a requested injunction by Plaintiff 3RCC in the *CODEPINK* lawsuit for a permit to camp in Schenley Park. The Court did order the City to allow *CODEPINK* to use Point State Park on Monday and Tuesday, September 21-22. The City subsequently indicated that it would issue permits for 3RCC and CODEPINK to use Point State Park on Monday and Tuesday.

32. Accepting the *CODEPINK* Court's decision, *3RCC* adjusted its plans to simply use Schenley Park during the daytime for a "sustainability fair," an event for which the City of Pittsburgh issued a permit.

33. The *Seeds of Peace* bus and several others that had arrived in Pittsburgh to help feed demonstrators was and is a crucial component of both modeling how to provide healthy

food to people and actually dispensing the food.

**Defendants Harass Seeds of Peace Members and Illegally Search and Seize the Bus.**

34. On Friday, September 18, 2009, shortly before noon, *Seeds of Peace* members returned to the bus, which had been parked in the exact same spot on Melwood Avenue since Monday. Group members had locked the bus door and left it unattended for about an hour.

35. Upon returning to the bus at about 1:00 p.m., two *Seed of Peace* members saw a Pittsburgh police officer (later identified as Officer Kurvach) on the bus, while Defendant Sellers stood in the vehicle's doorway.

36. The *Seeds of Peace* members asked the police what they were doing on the bus and informed the officers that they did not consent to any entry or search of the bus.

37. At no time did the defendant police officers indicate that they had a search warrant to board the bus, nor did they ever show the *Seeds of Peace* members a search warrant.

38. The defendant police officers then belligerently began demanding that the *Seeds of Peace* members provide proof of the vehicle's ownership.

39. Although the *Seeds of Peace* members, as designated operators of the bus, had a key to the bus and could have driven the bus to a different location, Defendant Sellers did not speak with any of the members and instead called for a tow truck.

40. Informed that one of the people named on the vehicle registration, Plaintiff Michael Bowersox, was en route to the area and his arrival was imminent, Defendant Sellers said, "I don't care! I don't want to hear it."

41. The defendant police officers began loudly ordering *Seeds of Peace* members to provide

identification and demanded that a physical ID card be produced to verify identification. The defendant officers also asked members to provide their social security numbers.

42. A tow truck arrived shortly thereafter and towed the bus to a City of Pittsburgh impound lot.

43. No one had reported the vehicle as being stolen and the defendants never informed *Seeds of Peace* members that they believed the bus was stolen.

44. The bus owner, Plaintiff Michael Bowersox, arrived on the scene a mere minutes after the bus was towed away.

45. At no time during the course of this incident did the defendant police officers tell *Seeds of Peace* members that the bus had been illegally parked. The defendant officers claimed at one point that the bus was towed because the bus was clearly over tonnage for the neighborhood.

46. Even if the bus had been illegally parked, which the police at the time never claimed, the proper procedure would have been to issue the operator a citation for illegal parking and instruct him to move the vehicle, not to impound it. According to the Pittsburgh City Code, a vehicle parked in violation of the Commonwealth Vehicle Code can only be removed or towed "upon authorization of the Superintendent of Police" and then only if neither the owner or operator is present to move the vehicle. *See* Sections 523.02(a), 525.05.

47. Plaintiff Bowersox was able to regain the *Seeds of Peace* bus, but not until he paid $220.00 and was forced to retrieve the vehicle from the City's tow pound at approximately 9:30 p.m. The next morning, Bowersox noticed that during the time the

9

City had control of the Seeds of Peace bus, the large passenger side mirrors had been shattered.

48. Two days after retrieving the bus, and while talking with counsel, Seeds of Peace members looked through the bus paperwork for registration papers and discovered a parking/traffic citation that was never mentioned to the members and not signed by an individual acknowledging receipt of the citation. The citation claims that the bus was parked in violation of P.S. 75 Sec. 3354(a) – Additional Parking Regulations – Two-way Highways.  No dollar or fine amount is listed on the citation.

49. Besides the out-of-pocket damages and inconvenience caused by defendants' unconstitutional actions, Mr. Bowersox has suffered humiliation, embarrassment and emotional distress.

**The Seizure of the Bus Was a Deliberate Decision by Bureau of Police Policymakers**

50. The individual defendant police officers' actions on September 18 were not a random, unauthorized seizure of the bus.

51. Under the Pittsburgh City Code, a vehicle parked in violation of the Commonwealth Vehicle Code can only be removed or towed "upon authorization of the Superintendent of Police."  *See* Section 523.02(a),

52. As noted above, Pittsburgh police had the *Seeds of Peace* bus under surveillance since at least the morning of Tuesday, September 15, 2009.

53. Moreover, on the same evening that the *Seeds of Peace* bus was seized, Pittsburgh police officers (who are not named in this lawsuit) harassed the owners of the Everybody's Kitchen bus, which had come to the City to feed demonstrators.

54. That bus was parked, with the owner's permission, in a private residential driveway in the City's Bloomfield neighborhood.

55. The police claimed that the bus was illegally parked because it was obstructing a sidewalk.

56. In fact, only the emergency ladder attached to the back of the bus was sticking out onto the sidewalk, encroaching not more than one foot and leaving plenty of room for pedestrians to pass by safely. The alleged obstruction was remedied by bus owners removing the ladder.

57. Nevertheless, the police demanded documents showing proof of bus ownership, and insisted that people affiliated with the bus provide personal identification, even though under Pennsylvania law the police have no authority to demand identification in such situations.

58. The next day, after Mr. Bowersox had retrieved the *Seeds of Peace* bus and parked it on private property in north Oakland, several police cars arrived on the scene and asked to speak with the property's owner to discuss the bus. The property owner advised the police that he had given permission for the bus to be parked on his property.

59. Since the arrival of the bus, officers from the City of Pittsburgh Police Department have routinely and randomly driven by the property, including drive-bys in the middle of the night with the officers shining large spot lights onto the property and into the windows of the Seeds of Peace and Everybody's Kitchen buses.

60. The ongoing surveillance of the "food buses" in Pittsburgh to feed demonstrators and the foregoing incidents demonstrate that the defendants' actions, including the illegal search

and seizure of the Seeds of Peace bus, were not random, unauthorized actions of individual police officers, but rather were directed and/or ratified by policymakers within the Pittsburgh Bureau of Police.

**Pittsburgh Police Stage a Warrantless Raid of the Property Where the *Seeds of Peace* Bus is Parked**

61. At about 11:30 on Sunday night, September 20, approximately forty Pittsburgh police officers in riot gear, with semi-automatic weapons, arrived at private property on Sassafrass Street in Pittsburgh's Lawrenceville neighborhood.

62. The *Seeds of Peace* and Everybody's Kitchen buses are parked on the property with the owner's permission, where they have been preparing food for the upcoming *3RCC* demonatrations.

63. Without a warrant, the police came approximately 25 feet onto the property where they demanded that the property owner allow them entry onto the premises. They informed the owner that this was a national security investigation and that no warrant was necessary.

64. After about twenty minutes of discussion the owner allowed the police onto the property. The police searched the entire property, except for the buses.

65. The Police asked *Seeds of Peace* members for consent to search the bus, but group members refused. The police were told they could not search a refrigeration unit containing food for the week, but the Police searched the cooler without consent, probable cause or exigent circumstances.

66. The warrantless search of the premises resulted in no arrests or confiscation of items.

**Pittsburgh Police Detain Four *Seeds of Peace* members for "loitering."**

67. Shortly after the Sunday evening raid on the Sassafrass Street property, at about 1:30 a.m. on Monday, September 21, four *Seeds of Peace* members left the area for the less-then-one-mile walk to the home where they are staying.

68. Almost immediately a vehicle's lights were shone on them. Shortly thereafter the vehicle drove directly at them at a high rate of speed, screeching to a stop right in front of them.

69. Approximately thirteen Pittsburgh police officers jumped out of the van, laughing.

70. The officers demanded to know what the four *Seeds'* members were doing on the street, stated that this was an "official investigation" and demanded that the four produce identification, which they did.

71. The police also searched one of the four *Seeds'* members bags, again without warrant, probable cause or exigent circumstances. No Police found no contraband.

72. When group members asked if they were free to leave, the Police said that they were not: they were being "detained."

73. When *Seeds'* members asked on what ground they were being detained, the police said "loitering."

74. The four group members were detained for nearly an hour and then released to continue walking.

75. The Police issued no citations and did not arrest anyone.

**Ongoing Police Harassment Monday Morning**

76. As of this writing, Pittsburgh Police have returned to the Sassafrass Street address. Again without either search or arrest warrants, they are demanding that *Seeds'* members produce identification. Two are being detained without charge.

13

# CLAIMS

**Claim 1: Illegal Search -Violation of the Fourth Amendment (Bowersox v. All Defendants)**

77. Defendants' search of the bus on Friday, September 18, without consent, exigent circumstances and/or a search warrant violated Plaintiffs *Seeds of Peace* and Bowersox's right to be free from unreasonable searches except upon probable cause and a warrant under the Fourth Amendment to the U.S. Constitution.

**Claim 2: Illegal Seizure -Violation of the Fourth Amendment (Bowersox v. All Defendants)**

78. Defendants' seizure of the *Seeds of Peace* bus without probable cause or other lawful reason violated Plaintiffs *Seeds of Peace* and Bowersox's right to be free from unreasonable property seizures under the Fourth Amendment to the U.S. Constitution.

**Claim 3: First Amendment Retaliation (Bowersox v. All Defendants)**

79. Defendants' search and seizure of the *Seeds of Peace* bus was in retaliation for Plaintiffs *Seeds of Peace* and Bowersox's announced intention to engage in constitutionally - protected association with, and provision of food and medical supplies to, demonstrators against the G-20 summit, which is a violation of Mr. Bowersox's rights under the First and Fourteenth Amendments to the U.S. Constitution to be free from retaliation for exercising his constitutional rights.

**Claim 4: Fourth Amendment Violations (*Seeds of Peace* v. City of Pittsburgh Bureau of Police)**

80. Defendants' illegal detention and search of the four *Seeds of Peace* members on Monday morning, September 21, 2009, violated their right to be free from unreasonable searches

and seizures under the Fourth and Fourteenth Amendments to the U.S. Constitution.

**Claim 5: First Amendment Retaliation (3RCC and *Seeds of Peace* v. City of Pittsburgh Bureau of Police)**

81. Defendants' illegal searches, seizures and harassment constitutes retaliation against Plaintiffs *3RCC* and *Seeds of Peace* over their effort to engage in constitutionally-protected political activity in Pittsburgh public spaces and in retaliation for *3RCC's* lawsuit and victory in getting a federal court injunction ordering the City to allow them to use Point State Park, all of which violates the groups' rights under the First and Fourteenth Amendments to the U.S. Constitution. Officers, employees and agents of Defendant City of Pittsburgh Police Bureau have engaged in a deliberate, intentional and persistent pattern of misconduct in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution over the past few days against plaintiffs. Plaintiffs face a credible threat that such misconduct will continue in the future absent judicial intervention.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court:

a. Declare that the Defendants' actions violated the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution;

b. Issue injunctive relief, preliminary and permanent thereafter, enjoining the City of Pittsburgh Bureau of Police and their officials, officers, employees, agents, assigns and any other people working in concert with them, from detaining or searching Plaintiffs except upon properly executed search or arrest warrants;

c. Award damages to Plaintiffs in an amount to be decided at trial;

d. Award Plaintiffs reasonable costs and attorneys' fees;

e. Grant such other relief as this Court may deem just and appropriate to protect Plaintiffs' constitutional rights.

Respectfully submitted,

| | |
|---|---|
| /s/ Michael J. Healey | /s/ Witold J. Walczak |
| Michael J. Healey | Witold J. Walczak |
| PA Id. No. 27283 | PA Id. No. 62976 |
| | |
| /s/ Glen S. Downey | /s/ Sara J. Rose |
| Glen Downey | Sara J. Rose |
| PA Id. No. 209461 | PA Id. No. 204936 |
| | |
| Healey & Hornack, P.C. | American Civil Liberties Union- |
| The Pennsylvanian, Suite C-2 | Foundation |
| 1100 Liberty Avenue | of Pennsylvania |
| Pittsburgh, PA 15222 | 313 Atwood Street |
| (412) 391-7711 | Pittsburgh, PA 15213 |
| (412) 281-9509 fax | (412) 681-7864 |
| mike@unionlawyers.net | (412) 681-8707 fax |
| glen@unionlawyers.net | vwalczak@aclupgh.org |
| | srose@aclupgh.org |

/s/ Jules Lobel
Jules Lobel

Center for Constitutional Rights
3900 Forbes Avenue
Pittsburgh, PA 15260
(412) 334-1379
(412) 281-9509 (fax)
Jll4@pitt.edu

Attorneys for Plaintiffs

Date: September 21, 2009